**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**ADOLFO SARABIA-NAVA,**

                **Petitioner,**

      v.                                                **CASE NO. 10-3232-RDR**

**LISA J.W. HOLLINGSWORTH,[1]**

                **Respondent.**

**MEMORANDUM AND ORDER**

This matter is a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241 by a prison in federal custody.[2] Petitioner proceeds pro se and submitted the full filing fee. He challenges administrative disciplinary action taken against him.

**Background**

During the relevant time, petitioner was serving a federal sentence imposed in the U.S. District Court for the District of Arizona. On December 31, 2009, a correctional officer conducting a random cell search discovered a home-made syringe hidden in a mattress in the cell petitioner shared with another prisoner.

On the same, the officer prepared an incident report charging Possession of Drug Paraphernalia. The charging document reflects the date and place of the incident, specific charges, the relevant code provision, and detailed description of the discovery of the contraband

---

[1] The court notes, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, that Lisa J.W. Hollingsworth is the current warden of the United States Penitentiary, Leavenworth, Kansas, and is the proper substituted respondent. The clerk of the court is directed to note the substitution on the record.
[2] The court notes petitioner has since been released from confinement. *See* http://www.bop.gov/iloc2.

item.

Petitioner received the report on January 8, 2010. Staff conducted an investigation on the same day, and petitioner reportedly acknowledged to staff that the syringe was his.

On January 14, 2010, petitioner appeared before the Unit Discipline Committee (UDC) and acknowledged he committed the violation. The UDC referred the matter to the Discipline Hearing Officer (DHO). Petitioner received a Notice of Discipline Hearing and a written explanation of his rights at that hearing on January 14, 2010. Petitioner signed both documents, declined representation by staff and declined to call witnesses.

On January 26, 2010, the DHO hearing was conducted. Petitioner appeared at the hearing and stated the item was his and that his cellmate did not know about it. The DHO found the evidence supported the violation charged and penalized petitioner with the disallowance of 27 days of Good Conduct Time (GCT), 60 days of disciplinary segregation, and 60 days of loss of commissary and other privileges. The DHO verbally advised petitioner of the decision, but the written decision was not prepared until June 18, 2010. Staff forwarded a copy to petitioner on June 30, 2010; petitioner states he received it on or about July 20, 2010.

Generally, a prisoner in the custody of the federal Bureau of Prisons is expected to work as assigned by the prisoner's unit team. However, certain events may reduce a prisoner's wages to the maintenance pay level. These events include a refusal to participate in the Inmate Financial Responsibility Program and the commission of a disciplinary infraction involving drugs or alcohol. This restriction ordinarily is in effect for a one-year period, and the

wage reduction is viewed as administrative rather than a disciplinary sanction. *See* Doc. 6-4 Mason declaration and BOP Program Statement 5251.06, *Inmate Work and Performance Pay*.

As a collateral result of his disciplinary action, petitioner's performance pay was reduced.

## Discussion

Administrative disciplinary proceedings conducted by prison personnel are not tantamount to a criminal prosecution, and a prisoner is not entitled to the full panoply of rights in such proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). But where, as here, a prison disciplinary action may result in the loss of good conduct time, a prisoner is entitled to limited due process protections. In this context, due process requires that the prisoner receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Freeman v. Carroll*, 2012 WL 6604559, *7 (10th Cir. 2012)(citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985)(quoting *Wolff*, 418 U.S. at 555)). Likewise, due process requires that "the findings of the prison disciplinary board are supported by some evidence in the record." *Hill, id*.

Here, petitioner's challenge concerns the delay in providing him with a written statement by the DHO explaining the basis for the disciplinary decision and the evidence supporting the finding. The governing regulation provides that a written decision ordinarily should be issued within 10 days. 28 C.F.R. § 541.17(g). Petitioner

did not receive the written decision until at least late June 2010, more than six months after the hearing.

In *Sandin v. Conner*, 515 U.S. 742 (1995), the United States Supreme Court held that prison regulations generally are "designed to guide correctional officials in the administration of a prison. …not … to confer rights on inmates." *Id*. at 481-82. Thus, the violation of the agency regulation does not present a constitutional claim remediable in habeas corpus. *See United States v. Caceres*, 440 U.S. 741, 751-52 (1978)(agency regulation violation did not present constitutional question).

Accordingly, courts considering challenges to the timing of the issuance and delivery of a final written statement to a prisoner after a disciplinary hearing have uniformly rejected this as a ground for relief in habeas corpus. *See, e.g. DeRoo v. Holinka*, 2009 WL 3422785 (W.D. Wis. 2009)(providing copies of DHO reports between four and nine years after hearing did not warrant restoration of good time credits; rather, relief was to provide copies of relevant reports and allow opportunity for appeal) and *Oladimu v. U.S.,* 2011 WL 5834937 (M.D. Pa. 2011)(where DHO reports were not made available until nearly two years after the hearing, error was corrected by making reports available to prisoner and allowing time to appeal).

In this case, however, it appears that while petitioner eventually received the DHO report, his administrative grievances were rejected first as untimely, because he did not submit the DHO report showing the late date upon which it was prepared, and later for being submitted at the wrong level and upon appeal, as untimely. (Doc. 6-1, p. 29, Doc. 6-2, Fields affidavit). The materials submitted in this action state that "If an inmate provides staff verification

of the reason for a delay in submitting an administrative remedy, such as a delay in receiving a DHO report,[that information] would have extended the time frames for the submission. As well, if an appeal is rejected for being untimely submitted, the inmate can appeal the rejection and provide staff verification to justify the delay in a subsequent appeal." Fields affidavit, par. 6. There is no evidence that petitioner was advised of this policy. Under these circumstances, this matter ordinarily should be remedied by a remand to allow the petitioner the opportunity to pursue administrative remedies.

The court notes, however, that petitioner's release from confinement renders this matter moot, as there no longer is am "actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). *See also Rhodes v. Judiscak*, 676 F.3d 931 (10th Cir. 2012)(dismissing as moot appeal on prisoner's claim of excessive sentence due to his release from confinement).

IT IS, THEREFORE, BY THE COURT ORDERED this matter is dismissed.

Copies of this order shall be transmitted to the parties.

**IT IS SO ORDERED.**

DATED: This 29th day of January, 2013, at Topeka, Kansas.

S/ Richard D. Rogers
RICHARD D. ROGERS
U.S. Senior District Judge